Charles M. Tebbutt, WSBA #47255
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97405
charlie@tebbuttlaw.com
Tel: (541) 344-3505

Andrea K. Rodgers, WSBA #38683
Law Offices of Andrea K. Rodgers
3026 NW Esplanade
Seattle, WA 98117
andrearodgers42@gmail.com
Tel: (206) 696-2851

Toby J. Marshall, WSBA #32726
Terrell Marshall Law Group PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
tmarshall@terrellmarshall.com
Tel: (206) 816-6603

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COMMUNITY ASSOCIATION FOR RESTORATION OF THE ENVIRONMENT, INC., a Washington Non-Profit Corporation<br><br>*and*<br><br>FRIENDS OF TOPPENISH CREEK, a Washington Non-Profit Corporation,<br><br>       Plaintiffs,<br><br>   *v.*<br><br>SNIPES MOUNTAIN DAIRY, INC., a Washington Corporation,<br><br>       Defendant. | Case No. 1:17-cv-3067<br><br>COMPLAINT |

COMPLAINT                                                          1

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

## INTRODUCTION

1.     This is a civil action for declaratory and injunctive relief against Defendant Snipes Mountain Dairy, Inc. (hereinafter "Snipes Mountain") for violations of the Federal Water Pollution Control Act, more commonly referred to as the Clean Water Act ("CWA" or the "Act"), 33 U.S.C. §§ 1251, *et seq*.

2.     This action is brought pursuant to the citizen suit provision Section 505 of the CWA, 33 U.S.C. § 1365.

3.     As detailed below, Plaintiffs allege that Snipes Mountain Dairy has discharged pollutants, and will continue to discharge pollutants, into waters of the United States.

4.     For the past five years and 60 days, Snipes Mountain's discharges have been, and continue to be, in violation of the effluent standards and limitations contained in its Concentrated Animal Feeding Operation (CAFO) National Pollutant Discharge Elimination System (NPDES) permit (hereinafter "CAFO Permit"), violating Section 402 of the CWA, 33 U.S.C. § 1342, as well as Section 301 of the CWA, 33 U.S.C. § 1311.

5.     Plaintiffs Community Association for Restoration of the Environment, Inc. ("CARE") and Friends of Toppenish Creek (collectively, "Plaintiffs") seek

COMPLAINT                                                                                    2

declaratory and injunctive relief to redress Snipes Mountain's violations of the terms and conditions of its CAFO Permit and the CWA. Plaintiffs also seek the imposition of civil penalties against Snipes Mountain under the CWA. Finally, Plaintiffs seek an award of their fees and costs, including attorneys' and expert witnesses' fees and costs, incurred in prosecuting this action.

## JURISDICTION

6. This Court has subject matter jurisdiction over the claims specified in this Complaint pursuant to 33 U.S.C § 1365(a) and 28 U.S.C. §1331. The relief requested is authorized by, *inter alia*, 33 U.S.C. §§ 1319(d), 1365(a) and (d), and 28 U.S.C. §§ 2201 and 2202.

7. In compliance with 33 U.S.C. § 1365(b)(1)(A), on February 8, 2017, Plaintiffs gave notice of the violations specified in this Complaint and of their intent to file suit to Snipes Mountain, the Administrator of the U.S. Environmental Protection Agency (EPA), the Regional Administrator of the EPA, and to the State of Washington. A copy of the notice letter is attached hereto as Exhibit A and is incorporated by reference.

8. In compliance with 33 U.S.C. § 1365(b)(1)(A), on March 28, 2017, Plaintiffs gave supplemental notice of violations specified in this Complaint and of their intent to file suit to Snipes Mountain, the Administrator of the EPA, the Regional Administrator of the EPA, and to the State of Washington. A copy of the

supplemental notice letter is attached hereto as Exhibit B and is incorporated by reference.

9.    Sixty days have passed since the initial notice was served, and the violations complained of in the notice letter are continuing at this time, or are reasonably likely to continue.  Snipes Mountain remains in violation of its CAFO Permit and the CWA.  Neither the EPA nor the Washington Department of Ecology ("Ecology") has commenced or is diligently prosecuting a civil or criminal action against Snipes Mountain to redress the violations.

**VENUE**

10.    Venue is appropriate pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations complained of are located in the District.

**PARTIES**

Plaintiffs

11.    Plaintiffs are two community organizations comprised of members who live, work, and recreate in the State of Washington.  Plaintiffs share similar interests in improving, protecting, and preserving regional water bodies and groundwater.

12.    Plaintiff CARE is a nonprofit corporation organized under the laws of the State of Washington.  CARE's principal office is located in Outlook, Washington.

COMPLAINT                                                                                          4

13.    CARE is a grassroots organization composed of concerned community members.  Its mission is to inform Washington residents about activities that endanger the health, welfare, and quality of life for current and future Washingtonians through education and citizen empowerment.  CARE also acts as an advocate to protect and restore the economic, social, and environmental resources of the region.  In carrying out its mission, CARE has appeared in numerous local, state, and federal proceedings.

14.    CARE's organizational purposes are adversely affected by Snipes Mountain's violations of the CWA.  These violations have caused significant environmental contamination, including contamination of surface and ground waters.  But for Snipes Mountain's unlawful actions, CARE would not have to spend as much of its resources on the environmental problems created by illegal discharges from individual large-scale industrial farming operations, and could direct these resources to other priorities.

15.    CARE has individual members who reside in Yakima County and in close proximity to Snipes Mountain.  The environmental, health, aesthetic, economic, and recreational interests of CARE's members have been and will continue to be adversely affected by Snipes Mountain's illegal discharges and violations of the CWA.  For instance:

a. CARE's members' aesthetic interests have been and will continue to be adversely affected by Snipes Mountain's violations of the CWA. CARE's members have aesthetic interests in not seeing cow manure where it shouldn't be. Snipes Mountain's compost piles, over-topping lagoons, and application to frozen fields harm CARE's members' aesthetic interests.

b. CARE's members were injured by Snipes Mountain's improper manure application and subsequent flooding in Outlook, Washington. Flooding of manure-contaminated water that originated at a neighboring dairy field damaged homes, properties, drinking water wells, and roads in Outlook. The flooding also caused discharges of pollutants to Sunnyside Valley Irrigation District drains, the Granger Drain, and eventually the Yakima River. Snipes Mountain exacerbated this flooding by making improper manure applications in the days and hours prior to the flood, at a time when no manure applications should have been made. This flooding injured personal property and injured or threatened members' health by contaminating water and well water.

c. CARE's members' recreational interests have been and will continue to be adversely affected by Snipes Mountain's violations of the CWA.

CARE's members recreate on the Yakima River and their ability to fish and swim in its waters are adversely affected. Polluted surface water and groundwater from Snipes Mountain discharges into ditches, drainage ways, and canals that travel to the Yakima River, adversely affecting CARE's members' ability to recreate in safe and clean waters.

d. CARE's members have suffered actual and threatened injuries to their health and safety caused by Snipes Mountain's violations of its CAFO Permit, including provisions prohibiting manure stored in lagoons or applied to fields from contaminating the underlying aquifer. Manure-contaminated water has impacted and threatens to impact the safety of members' drinking water wells and may cause detrimental health effects if consumed.

16. Plaintiff Friends of Toppenish Creek is a nonprofit corporation organized under the laws of the State of Washington.

17. Friends of Toppenish Creek is an organization composed of concerned community members and is dedicated to protecting the rights of rural communities and improving oversight of industrial agriculture. Friends of Toppenish Creek works through public education, citizen investigations, research, legislation, special events, and direct action. Friends of Toppenish Creek particularly devotes

COMPLAINT 7

itself to enhancing, preserving, protecting, and monitoring the water quality of watersheds in the Yakima area.

18.     Friends of Toppenish Creek's organizational goals are adversely affected by Snipes Mountain's CWA violations.  Friends of Toppenish Creek works tirelessly to protect the rights of communities against groundwater pollution caused by industrial agriculture.

19.     Friends of Toppenish Creek's members live in Yakima County and in close proximity to Snipes Mountain.  Friends of Toppenish Creek's members have been and continue to be injured, and their interests adversely affected, by Snipes Mountain's CWA violations.  For instance:

      a.  Friends of Toppenish Creek's members' aesthetic interests have been, and will continue to be, adversely affected by Snipes Mountain's improper manure storage and disposal.  Friends of Toppenish Creek's members have aesthetic interests in not seeing cow manure where it shouldn't be.  Snipes Mountain's compost piles, over-topping lagoons, and application to frozen fields harm Friends of Toppenish Creek's members' aesthetic interests.

      b.  Friends of Toppenish Creek's members' recreational interests have been, and will continue to be, adversely affected by Snipes Mountain's CWA violations.  Friends of Toppenish Creek's members

use the Yakima River for fishing, swimming, and general recreating. Snipes Mountain's CWA violations contaminate groundwater and other waters that eventually flow to the Yakima River, harming Friends of Toppenish Creek's members' ability to enjoy recreation on the Yakima River in safe, clean water.

c. Friends of Toppenish Creek's members were injured by Snipes Mountain's improper manure application and the subsequent flooding in Outlook, Washington. Flooding of manure-contaminated water caused discharges of pollutants to Sunnyside Valley Irrigation District drains, the Granger Drain, and eventually the Yakima River.

d. Friends of Toppenish Creek's members have suffered actual and threatened injuries to their health and safety caused by Snipes Mountain's violations of its CAFO permit, including provisions prohibiting manure stored in lagoons from contaminating the underlying aquifer. Manure-contaminated water has impacted and threatens to impact the safety of members' drinking water wells and may cause detrimental health effects if consumed.

<u>Defendant</u>

20. Defendant Snipes Mountain Dairy, Inc. is incorporated in the State of Washington, and owns and operates the dairy known as Snipes Mountain Dairy.

The dairy is located at or near 211 Nichols Road in Outlook, Washington.

21.     Snipes Mountain is classified as a concentrated animal feeding operation (CAFO).

## STATUTORY AND REGULATORY FRAMEWORK

22.     Under the CWA, the United States has committed itself "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," including establishing a "national goal that the discharge of pollutants into the navigable waters be eliminated by 1985." 33 U.S.C. § 1251.

23.     Section 301(a) of the CWA prohibits the point source discharge of pollutants to navigable waters of the United States unless the discharge is in compliance with a National Pollutant Discharge Elimination System (NPDES) permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

24.     "Navigable waters" are broadly defined as "the waters of the United States." 33 U.S.C. §§ 1362(7).

25.     The "discharge of a pollutant" means any "addition of a pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). Pollutant is defined to include "industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6). "The term 'point source' means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock,

COMPLAINT                                                                      10

concentrated animal feeding operation, landfill leachate collection system, … from which pollutants are or may be discharged." 33 U.S.C. § 1362(14); 40 C.F.R. § 122.2.

26.     The NPDES permitting scheme is a primary means of controlling discharges from concentrated animal feeding operations.

27.     Although EPA is the primary administrator of the CWA, section 402 of the Act, 33 U.S.C. § 1342, authorizes EPA to delegate its authority to state agencies to implement and administer the CWA.  33 U.S.C. § 1342(b).  EPA has delegated primary responsibility for NPDES permits for concentrated animal feeding operations in Washington to the Washington State Department of Ecology ("Ecology"), which has itself sub-delegated authority, however illegally, to the Washington State Department of Agriculture for implementation and enforcement of NPDES permits for CAFO operations.

28.     The CWA authorizes citizens to file suit against any person alleged to be in violation of an effluent standard or limitation.  33 U.S.C. § 1365(a)(1).  An "effluent standard or limitation" includes a "permit or condition thereof issued under section 1342."  33 U.S.C. § 1365(f)(6).

29.     Snipes Mountain Dairy's CAFO Permit is the type of permit that is enforceable through citizen suits brought under 33 U.S.C. § 1365.

30.     Snipes Mountain is a "person" within the meaning of § 301(a) of the CWA, 33 U.S.C. § 1311(a), and is subject to suit under the CWA citizen suit provision, 33 U.S.C. § 1365.

**FACTS**

31.     All preceding paragraphs are incorporated herein.

32.     Snipes Mountain Dairy, Inc. was incorporated by Henry Haak and commenced operations as Snipes Mountain in 2006.  Prior to 2006, Snipes Mountain was operated by the same people under a different name as a proprietorship.  Mr. Haak is the primary shareholder and presently manages Snipes Mountain.

33.     Snipes Mountain is a large dairy CAFO under federal and state law.  40 C.F.R. § 412.2; WAC 173-224-030.

34.     According to public records obtained by Plaintiffs, Ecology issued a 2006 Washington Concentrated Animal Feeding Operation (CAFO) General NPDES permit, permit number "WAG015029B" (hereinafter "CAFO Permit") to Snipes Mountain.  A copy of Snipes Mountain's CAFO Permit is attached hereto as Exhibit C.

35.     Snipes Mountain composts the solid manure wastes generated by its herd on-site or on agricultural fields owned or operated by Snipes Mountain.

36.     Solid manure that is not composted by Snipes Mountain, along with the millions of gallons of liquid manure generated by the herd each year, are land-applied to Snipes Mountain's agricultural fields.

37.     Solid manure is stored and composted at Snipes Mountain on permeable surfaces.

38.     Snipes Mountain has violated and exceeded the effluent limitations and standards contained in Snipes Mountain's CAFO Permit and, thus, the CWA.

39.     Snipes Mountain has discharged, and continues to discharge, liquid manure and manure-contaminated water, causing the manure and other pollutants such as nitrate, sulfate, dissolved solids, ammonium, phosphorous, and pharmaceuticals used on the dairy to discharge into surface waters and groundwater.

40.     Groundwater is a water of the State.  The CAFO Permit prohibits discharges to waters of the State.

41.     The discharge of liquid manure and manure-contaminated water to groundwater causes adverse impacts on the environment and human health.

42.     Its CAFO Permit and Washington law require Snipes Mountain to develop and follow a Nutrient Management Plan ("NMP").  Snipes Mountain's NMP and its terms are incorporated by reference into the CAFO Permit and are therefore enforceable against Snipes Mountain under the CWA.

## Defendant's Discharges in Violation of its CAFO Permit

43.     Its NMP and CAFO Permit mandate that Snipes Mountain apply manure and process wastewater to its fields at agronomic rates.

44.     Snipes Mountain has consistently made non-agronomic applications of manure and process wastewater to fields in violation of its NMP and CAFO Permit.

45.     Records for the Pivot Field indicate that manure applications were made between 2010 and 2015 without adequate soil sampling.  For instance, there was a complete failure to take soil samples in spring 2014, and a complete failure to take the requisite second-foot soil sample in spring 2012 and spring 2013.  These failures violate both Snipes Mountain's NMP and its CAFO Permit.

46.     Snipes Mountain further violated its NMP and CAFO Permit by not accounting for the amount of nutrients already present in the Pivot Field prior to making manure applications and thus applying without regard to agronomic needs. For example:

    a.  Soil sampling of Pivot Field in fall 2010 showed 611 lbs./acre of residual nitrate, ammonium, and organic matter in the top two feet of the soil column, vastly more nutrients than the triticale crop could uptake as fertilizer.

b. Soil sampling of the Pivot Field in fall of 2011, 2012, 2013, and 2014 showed 436, 447, 554, 588 lbs./acre of residual nitrate, ammonium, and organic matter, respectively, in the top two feet of the soil column, again vastly more nutrients than the triticale crop could uptake as a fertilizer.

47. Snipes Mountain had similar improper manure applications and record-keeping violations for the fields "Grant's 1," "Grant's 2," "Lagoon," and "Fernando's."

48. Applying manure in excess of agronomic rates leaves residual nitrate and ammonium in the soil column that cannot be used by the crop as fertilizer. Residual nitrate and ammonium leaches further down into the soil column with subsequent manure and process wastewater applications, irrigation water applications, and precipitation. Such pollutants then discharge to groundwater in violation of the CAFO permit.

49. In 2011, Snipes Mountain's application of manure in excess of agronomic rates to a field located near Fordyce and Outlook roads caused manure to flow off the field and into a nearby ditch. This discharge to waters of the State violated its CAFO Permit section S1.A.3, Effluent Limitations, which states, "Discharge of field runoff is prohibited when field applications exceed agronomic rates as defined in the nutrient management plan."

50.     Snipes Mountain's NMP section 5.5, Application Management, and CAFO Permit prohibit applications of manure to "frozen, snow covered ground or saturated soil if a potential risk of discharge to ground or surface waters exist."

51.     On or about February 28, 2017, and in the preceding days, Snipes Mountain applied manure to an agricultural field located adjacent and northeast to the Dairy facility.  On or about February 28, 2017, and in the preceding days, the agricultural field was frozen, snow-covered, and/or saturated.  These applications violated Snipes Mountain's NMP and CAFO Permit.

52.     Additionally, Snipes Mountain's NMP and CAFO Permit expressly caution against manure applications where there is a strong likelihood of precipitation in the forecast.  The manure application by Snipes Mountain on or about February 28, 2017, and in the preceding days, violated these provisions.

53.     The field to which Snipes Mountain was improperly applying manure was subsequently inundated with floodwaters from a neighboring property, which resulted in and/or exacerbated an illegal discharge of manure-contaminated water to canals, ditches, groundwater, and other waters of the State and United States, including the Granger Drain and the Yakima River.

54.     Manure-contaminated water from Snipes Mountain flooded nearby residences and yards, causing damages to personal property, homes, private and community drinking water wells.

55. Upon information and belief, other instances of discharges to waters of the State and United States have also occurred between 2012 and the present, in violation of the CAFO permit.

56. Snipes Mountain's CAFO Permit, Section S1.B, prohibits discharges of process wastewater "including seepage from waste storage facilities" from reducing existing water quality, subject to exceptions that do not apply in this case. Section S1.B further states that "[d]ischarges may not cause or contribute to a violation of the State Ground Water Quality Standards (Chapter 173-200 WAC)" and "[c]ontaminant concentrations of chemicals and nutrients found in saturated soils that have been applied at agronomic rates for agricultural purposes are exempt from all requirements of Chapter 173-200 WAC, if those contaminants will not cause pollution of any ground waters below the root zone."

57. Snipes Mountain's "waste storage facilities," or lagoons, have discharged process wastewater to the groundwater underlying the facility. This discharge and seepage has been continuous and ongoing since Snipes Mountain began using its lagoon system for manure storage.

58. Upon information and belief, Snipes Mountain's lagoons are unlined, inadequately lined, and are without an appropriate leak detection system to prevent the downward migration and seepage of process wastewater into groundwater.

59. Additionally, Snipes Mountain has failed to properly construct and maintain

the existing lagoons at the dairy facility. For instance, inspectors from the Washington State Department of Agriculture noted in 2011 and 2013 that Snipes Mountain's lagoons were operating at or near their maximum storage capacities, and had medium to high levels of solids in the lagoons. Earlier inspection reports establish a pattern of substantial problems with lagoon overtopping, failing to maintain adequate freeboard, failing to adequately maintain dikes, and instances of lagoon breaching due to inadequate storage capacities.

60. The seepage and discharge from Snipes Mountain's lagoons have caused or contributed to, and continue to cause or contribute to, exceedances of the State Ground Water Quality Standards for pollutants such as nitrate, sulfate, and total dissolved solids. Public records indicate that the groundwater underlying Snipes Mountain exceeds the Federal and State Ground Water Quality Standards for nitrate (10 mg/L), and show that wells tested in the area—including at the nearby Outlook School—have tested in excess of 10 mg/L nitrate.

61. Furthermore, the agricultural fields to which Snipes Mountain applies manure have contaminant concentrations of nitrate and phosphorus in saturated soils that will cause pollution of groundwater below the root zone. The concentrations of nitrate and phosphorus are too great to be used by any crop for fertilization. Further, the excess nitrate and phosphorus have moved below root zones and will discharge to groundwater. Snipes Mountain's history of applying

COMPLAINT 18

manure to fields at rates and in quantities exceeding any agronomic need is the cause of these unlawful contaminant concentrations.

## Defendant's Other Violations of its CAFO Permit

62.     Under its CAFO Permit, Snipes Mountain is required to "only apply manure, litter, and process wastewater to lands as specified in its nutrient management plan." CAFO Permit, Section S1.B.

63.     Snipes Mountain has violated its CAFO Permit and applied manure and process wastewater to lands not mentioned in its NMP.

64.     Snipes Mountain's CAFO Permit, Section S.1.C., Transfer of Manure Requirements, requires Snipes Mountain to provide recipients of manure or process wastewater with a current nutrient analysis. Its CAFO Permit also requires Snipes Mountain to "retain for five years the records of the date, recipient name and address, and approximate amount of manure, litter, and process wastewater transferred to another person."

65.     Snipes Mountain has consistently violated Section S.1.C. by failing to provide this information and keep records thereof.

66.     Section 2.1 of the NMP requires Snipes Mountain to update its NMP if its herd size, expressed in animal units, increases more than 10%. Under Section S6, Prevention of System Overloading, the number of animals at the facility cannot exceed the capacity of the waste storage facilities of the operation.

COMPLAINT                                                                19

67.     Snipes Mountain has violated Section 2.1 of its NMP and S6 of its CAFO

Permit.  Snipes Mountain's NMP is designed for 2936 Animal Units.  As recently

as 2014, Snipes Mountain's herd size was 3844 Animal Units, an increase well in

excess of 10%.

68.     Snipes Mountain does not have the capacity to adequately store and process

the amount of manure produced in a year because it has more animals than its

NMP was designed for.  This leads to over-application of manure on fields,

overtopping of lagoons, piling up of compost on unlined surfaces, etc.

69.     Snipes Mountain's NMP must also be updated if there are changes in land

base, crop rotation, or management that would adversely affect nutrient

management.  Section S3.D.2 of its CAFO Permit also requires an updated NMP if

"[t]he CAFO reduces or changes the field areas specified in the nutrient

management plan used for land application."

70.     Snipes Mountain has had changes in land base and crop rotation that

required an update to the plan.  Its failure to do so is another violation of Section

2.1 of the NMP and S3.D.3 of the CAFO Permit.

71.     Section 5.4 of Snipes Mountain's NMP requires soil sampling at the 12-inch

and 24-inch depths, as well as testing including ammonium, organic nitrogen,

phosphorous, and potassium.  Spring and fall soil sampling is required where

double-cropping is taking place.  Records of soil testing are required to be kept

COMPLAINT                                                                                              20

1  with records showing the date, application, and location where liquid and solid

2  manure is applied.

3  72.    Snipes Mountain has consistently failed to follow these sampling

4  requirements set by the NMP and CAFO Permit.  There are multiple years in

5  which no two-foot samples were taken, multiple years in which insufficient

6  sampling parameters were obtained, and multiple years in which samples were not

7  taken at all.  *See* Exhibit A, pp. 6-7.  Snipes Mountain's manure application

8  records also do not comply with its NMP and CAFO Permit.

9  73.    Snipes Mountain has applied manure or process wastewater to fields before

10  the requisite soil samples and nutrient content samples of liquid and solid manure

11  were obtained, a violation of Section 5.4 of the NMP and the CAFO Permit.

12  74.    Because of Snipes Mountain's improper soil sampling, manure applications

13  were and continue to be made in rates and quantities that exceed agronomic rates.

14  75.    Section 5.7, Mandatory Recordkeeping of the CAFO Permit, contains

15  detailed recordkeeping requirements for the Production Area and Land Application

16  Area that Snipes Mountain must maintain.

17  76.    Snipes Mountain has violated Section 5.7 of the CAFO Permit by failing to

18  create and maintain records (a)(i)-(viii), (b)(i)-(x), and (c).  See attached NOI,

19  Exhibit A for the complete list of missing or incomplete records.

20

COMPLAINT                                                                      21

## CAUSES OF ACTION

### Count I: Violation of the CWA

77.     Plaintiffs re-allege and incorporate the preceding paragraphs of this Complaint.

78.     Snipes Mountain is a "point source" under the CWA.

79.     Snipes Mountain's CAFO Permit, including its NMP which is incorporated by reference into the CAFO Permit, contain "effluent standard[s] or limitation[s]" under the CWA, 33 U.S.C. § 1342(a) & 1365(f).

80.     The ditches, drainage ways, streams, creeks, and canals surrounding Snipes Mountain are "navigable waters" under the CWA.

81.     Snipes Mountain has been violating and continues to violate its CAFO Permit and to discharge pollutants into these navigable waters.

82.     The manure, liquid manure, solid manure, process wastewater, and other manure-contaminated waters discharging from Snipes Mountain are "pollutants" under the CWA.

83.     Snipes Mountain has violated and remains in violation of § 301(a) of the CWA, 33 U.S.C. § 1311(a), by failing to comply with its CAFO Permit, including its NMP.

84.     Snipes Mountain has violated and remains in violation of § 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants from a point source into

COMPLAINT                                                                              22

navigable waters in violation of its CAFO Permit, including its NMP.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs CARE and Friends of Toppenish Creek respectfully request the Court enter a judgment:

   a. Declaring that Snipes Mountain has violated and remains in violation of its CAFO Permit and the CWA.

   b. Issuing Injunctive Relief requiring Snipes Mountain to come into immediate compliance with its CAFO Permit.

   c. Ordering Snipes Mountain to pay up to the maximum daily civil penalty allowable by law, inflation adjusted by 40 C.F.R. § 19.

   d. Ordering Snipes Mountain to pay Plaintiffs' attorneys' and expert witnesses' fees and costs incurred in prosecuting this action, including fees and costs for any post-judgment compliance monitoring.

   e. Ordering such other relief as the Court may deem just and proper.

Respectfully submitted this 11th day of April, 2017,

s/ Charles M. Tebbutt
CHARLES M. TEBBUTT
WSBA #47255
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
charlie@tebbuttlaw.com
Tel: (541) 344-3505

COMPLAINT 23

s/ Andrea K. Rodgers
ANDREA K. RODGERS
WSBA #38683
Law Offices of Andrea K. Rodgers
3026 NW Esplanade
Seattle, WA 98117
andrearodgers42@gmail.com
Tel: (206) 696-2851

s/ Toby J. Marshall
TOBY J. MARSHALL
WSBA #32726
Terrell Marshall Law Group PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
tmarshall@terrellmarshall.com
Tel: (206) 816-6603

*Counsel for Plaintiffs*

COMPLAINT